AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Northern District of Indiana

**SEALED**

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| | ) | |
| ERIC KRIEG | ) | 2:17 MJ 188 |
| | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ September 6, 2017 _____ in the county of _____ Lake _____ in the

___ Northern ___ District of ___ Indiana ___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. 5861(d) | Knowing Possession of a Destructive Device |
| 18 U.S.C. 842(a)(3)(A) | Transporting Explosive Materials |

**-FILED-**

OCT 1 2 2017

At _____ M
ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Booz M. Moise, Special Agent, F.B.I.
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 10/12/2017 _____

s/Susan Collins

_____
*Judge's signature*

City and state: _____ Fort Wayne, Indiana _____

SUSAN L. COLLINS, U.S. MAGISTRATE JUDGE
*Printed name and title*

SEALED

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT

I, Booz M. Moise, Special Agent, Federal Bureau of Investigation, being duly sworn, hereby depose and state as follows:

### BACKGROUND

1.     I am a Special Agent (hereafter "SA") with the Federal Bureau of Investigation (hereafter "FBI") and have been so employed since June 2008. I am the Special Agent Bomb Technician currently assigned to the Indianapolis Division of the FBI.  I am charged with investigating possible violations of federal criminal law, including terrorism offenses, bombings and other matters. I am familiar with, and have participated in, all of the normal methods of investigation, including visual surveillance, electronic surveillance, general questioning of witnesses and suspects, and the use of informants and undercover operations. I have also debriefed defendants, witnesses, and informants.   I have experience in both criminal and counterterrorism investigations.

2.     The facts set forth in this Affidavit are based on my personal knowledge, the knowledge obtained during my participation in this investigation, the knowledge of other law enforcement personnel, review of records and documents related to this investigation, communications with others who have personal knowledge of the events and circumstances described

1

herein and information gained through my training and experience. Because this Affidavit is being submitted for the limited purpose of supporting a criminal complaint, I have not included all facts known to me.

3.    This Affidavit is submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging ERIC KRIEG with violations of Title 26, United States Code, Section 5861(d) (knowing possession of a destructive device)[1] and Title 18, United States Code, Section 842(a)(3)(A)(transporting explosive materials).

## Facts Establishing Probable Cause

### Initial Incident

4.    On September 6, 2017, at approximately 5:38 p.m. CST, an explosion occurred at the U.S. Post Office located at 901 E Chicago Ave., East Chicago, Indiana 46312. At approximately 5:43 p.m. the U.S. Postal Inspector service was notified of the explosion. A postal worker (hereafter "PW1") was handling a package when it detonated. PW1 suffered minor injuries including cuts, abrasions and bruises to her head, legs, and feet.

5.    Investigators interviewed a postal worker (hereafter "PW2") who was working the front desk when the package containing the explosive device

---

[1] Title 26, United States Code, Section 5861(d) refers to receipt or possession of a "firearm not registered in the National Firearms Registration and Transfer Record" and Title 26, United States Code, Section 5845 defines "firearm" to include a "destructive device."

was most likely received. PW2 indicated that she had approximately twelve parcel transactions during her shift. PW2 described a suspicious individual during one of the transactions, who was a white male wearing a hoodie.

6.     Bomb squad technicians responded and cleared the scene. Investigators collected evidence to include multiple pictures of the explosive device and the package which contained the device. The device resembled a pipe bomb. The package was addressed to an individual (hereafter "Victim1"), with a return address label.

7.     Investigators found the receipt for this package, which revealed a transaction time of 11:19 a.m., destination Munster, IN, weight 4lbs 0.10oz, expected arrival date of September 8, 2017, USPS tracking number 9505510542427249040143, transaction total $9.85, cash payment of $20.00 and change of $10.15.

8.     Investigators found the Product Tracking & Reporting document for the above described receipt and confirmed that this parcel was addressed to Victim1's address.

9.     Victim1 is an attorney who represented Individual 1 in a defamation lawsuit against KRIEG related to the blog posts. KRIEG filed for bankruptcy following the lawsuit and ultimately settled with Individual 1 for approximately $60,000.

3

10.  Victim 1 also represented a public official in a complaint made before the Lake County Election Board, which was dismissed after a hearing.

11.    Additionally, the City of Munster, Indiana passed an LGBT ordinance and Victim1 filed a supporting opinion on behalf of the City of Munster. Victim1 believed KRIEG might have disagreed with the ordinance.

**PW2 Interview**

12.    On September 7, 2017, investigators interviewed PW2, who estimated that she received the package between 11:00am and 1:00pm and there were no other customers in the lobby at the time. The person dropping off the package shuffled forward as he approached the counter.  He carried a brown box parcel and placed it on the customer counter. He paid cash for the transaction.

13.    PW2 recalled the transaction because the return address on the parcel was 46322 which was Highland, Indiana.  PW2 knew the zip code was not correctly associated with a "Michigan Street" sender address.

14.    PW2 described the person dropping off the package as a white male, approximately 6'0" tall, thin build, clean shaven face, and approximately 30 years of age. He wore dark-rimmed glasses, black pants with very slender legs, dark vinyl sneakers, and a faded black hooded sweatshirt with the hood up. He shuffled as he walked.

15.     PW2 described the parcel as a cubed brown box with no labels or branding. The parcel had pre-printed sender and addressee labels. PW2 stated the box had seams and labels with clear tape over them. PW2 put the priority mail tape and priority sticker on the parcel.

16.     On or about September 8, 2017, investigators asked PW2 to view a photographic line-up. This line-up included KRIEG; however, PW2 made no positive identification on any of the photographs. PW2 related that the individuals depicted in the photographic line-up appeared too old.

**KRIEG Background**

17.     Investigators learned that KRIEG worked at Company A.

18.     KRIEG obtained a Bachelor of Science in Mechanical Engineering from State University of New York at Buffalo, a Masters of Engineering degree from Illinois Institute of Technology, and voluntarily coached ten primary and middle school students in the FIRST Lego Robotics competition from September 2010 through December 2014.

19.     KRIEG's engineering degree and involvement with robotics potentially give him the educational background and relevant knowledge to construct an improvised explosive device.

### Surveillance of KRIEG

20.     KRIEG is the registered owner of the black Ford Crown Victoria bearing Indiana registration 850RL (hereafter "VEHICLE"). On September 8, 2017 at approximately 2:00pm, investigators observed KRIEG walking in the Workplace employee parking lot of Company A toward the VEHICLE. He entered the VEHICLE and departed the parking lot.

21.     Later, investigators observed the VEHICLE at KRIEG's residence in Munster, Indiana (hereinafter "Residence").   At approximately 5:08pm investigators saw KRIEG exit the Residence through the garage and enter the VEHICLE. KRIEG drove to the Munster Indiana Recycling Center, 508 Fisher Street, Munster, Indiana. KRIEG backed-up the VEHICLE to a wooden shed identified as "Electronics Recycling."

22.     Investigators later checked the "Electronics Recycling" bin and located a cardboard box with a shipping label affixed to it.  The shipping label indicated it was destined for another known occupant of the Residence.  Inside the box were several electronic components, including some computer items such as hard-drives.  Some of the items were analyzed and determined to be associated with KRIEG but possibly dated.

23.     Investigators also recovered two discarded computer towers but it was unknown if they were affiliated with KRIEG.

6

**COMPANY A Access Information**

24    On or about September 11, 2017, investigators obtained information from Company A about KRIEG's employee access records for September 6, 2017.

25.    Activity logs for KRIEG indicated the following approximate times: 7:05am entering the Workplace, second swipe at 7:06am accessing a room within the Workplace, the third swipe at 10:58am leaving the Workplace, the fourth swipe at 11:00am reentering the Workplace, and the last swipe was at approximately 3:00pm leaving the Workplace.

**Witness Interview**

26.    Investigators spoke with an individual (hereafter "Witness1"), who conducted a transaction at the post office in close proximity to the IED transaction which occurred at 11:19am on September 6, 2017. Witness1 mailed a parcel at approximately 11:15am on September 6, 2017, at the East Chicago Post Office located at 901 East Chicago Avenue, East Chicago, Indiana.

27.    As Witness1 exited the Post Office, Witness1 observed a "peculiar" male subject (hereafter "UNSUB"), approximately 6'0" tall, late 30's to early 40's years of age, wearing a white medical mask, hooded sweatshirt, black jeans, with a "peculiar" walk, enter the post office as she prepared to exit. The UNSUB was carrying a small cardboard box wrapped in tape.

7

28.    Witness1 watched as the UNSUB walked up to the customer counter and waited for the clerk's reaction. Witness1 waited to ensure the clerk was safe; due to the strange characteristics of the UNSUB. After she observed the clerk treat the UNSUB professionally and friendly, Witness1 continued out of the Post Office to her Vehicle.

29.    Witness1 subsequently observed the UNSUB depart from the area of the Post Office and walk across Chicago Avenue toward the abandoned Bank located on the northeast corner of Kennedy Avenue and Chicago Avenue.

30.    The UNSUB shuffled toward his Vehicle but Witness1 observed the UNSUB appear to take a normal step as he got toward the Vehicle's door. Witness1 related that the UNSUB's Vehicle was parked behind the abandoned building facing northbound. Witness1 described the UNSUB's Vehicle as a dark colored Crown Victoria, with a police light near the side mirror, and with visible damage near the gas tank on the driver's side.

31.    The damage was described as rippled and possibly 1 1/2 feet by 1 1/2 feet. Witness1 believed there was white paper, with unknown smaller writing on it, covering the dark colored Crown Victoria's rear license plate. Witness1 observed the UNSUB enter the driver's side of the dark colored Crown Victoria, which she believed to be early 2000's.

32.    Witness1 ultimately travelled northbound Kennedy Avenue and observed the dark colored Crown Victoria exit from behind the abandoned

8

building and travel northbound on Kennedy Avenue, passing Praxair (a local business).

33.   Witness1 travelled next to the dark colored Crown Victoria and observed the UNSUB driving the Vehicle, while continuing to wear the white medical mask. Witness1 travelled northbound on Kennedy Avenue and exited at Columbus Drive. The UNSUB continue northbound on Kennedy Avenue past Columbus Drive.

34.   Witness1 estimated it was approximately 11:20am when she was travelling next to the UNSUB northbound on Kennedy Avenue.

35.   On October 2, 2017, investigators met with Witness1 to show her a photograph of the VEHICLE. Witness1 viewed several images of the VEHICLE on a laptop computer but was unable to confirm or deny if that was the Vehicle she observed on September 6, 2017.

36.   Investigators then had Witness1 view the VEHICLE in person. Witness1 observed the Vehicle but thought the damage located on the VEHICLE, at the rear quarter panel near the gas tank, was different from what she observed on the Crown Victoria she observed on September 6, 2016.

37.   Witness1 also believed that the Crown Victoria she observed had a chrome police spotlight; however, the VEHICLE has a black covered police spotlight. Witness1 related that, since some time had passed from her initial

observation of the Crown Victoria, she was unable to provide exact details to investigators.

**Second Incident**

38.      On September 29, 2017, an individual (hereafter "Victim2") received an unusual package envelope at his residence in Hammond, Indiana. Victim2's regular postal carrier delivered the package to Victim2's residence. Victim2 was not initially concerned about the contents of the package, because he held it up to an interior light and was able to see that an object was in the envelope.

39.    Victim2 opened and looked in the envelope and saw a bullet with a message. Victim2 read part of the message but never touched the bullet.  The bullet was wrapped in tape and had a message, "The next one will be in the back of your head."

40.    The envelope had a destination of Victim2, at his residence, and a return address.

41.    Victim2 knew about the explosion in East Chicago, Indiana.

42.    Victim2 was not immediately aware of anyone who would want to threaten him. Victim2 identified several individuals that he had unpleasant interactions with but did not name KRIEG.

43.    Victim2 was previously involved in online blogging/forums and was a frequent commenter on the forum "NWI Discussion Board" and used a

specific screenname. Victim2 was engaged in several heated discussions on such blog forums but stopped that activity following a suspension at work for his online activity.

44.    Investigators located a blog post from Victim2 in a discussion board, "Making Eric KRIEG, aka buzzcut, look like a fool". The comments appeared to be derogatory in nature:

> "Eric KRIEG hasn't made a post on his blog "Blue County in a Red State" for several weeks now. He has deleted the topics that got him sued and edited out many of his remarks on others. He has also disabled the comments section, so his blog is dead. [Individual 1] served him a huge cup of STFU, that's for sure. Has anyone watched the movie "The Promised Land" with Matt Damon? In the movie, Matt talks about f\*\*k y\*u money, IMO, if a poster received a large pension buyout and had f\*\*k y\*u money laying around, wouldn't it be fun to use some of that cash to sue a few posters on the bigots and trolls board? A libel lawsuit would reveal their true identities and lighten their pocketbooks at the same time. The best part of the plan is that you can't slander a troll, so nothing I've posted about them could be used in a countersuit against me. It's great when a plan comes together."

45.    Investigators identified the blog post as being from on or about October 11, 2013. Based on information provided by Victim2, it would be consistent with the timeframe he provided investigators, indicating his online activity on blog forums in approximately 2013-2014.

46.    Investigators located a blog repost from Victim2 related to KRIEG. Victim2 re-posted comments made by another forum member in a discussion board, "Making Eric KRIEG, aka buzzcut, look like a fool," titled "Eric KRIEG is an A$$hat". The comments appeared to be derogatory in nature:

11

"I never really paid attention to who you are, because frankly being a Republican in Lake County already makes you irrelevant, however I happened to come across your editorial in the times which was really out there. That made me look at your other blogs, and I must say, you are a first class asshat, and a typical right wing tea-bagging idiot. Do you not have a filter, or do you just say whatever the fuck you want to not thinking of people you insult. Thank GOD you have no chance of winning a county wide election here. It's people like you that give the county a bad name, and do NOTHING to improve the county as a whole."

47.     Investigators identified the blog post as being from on or about November 5, 2013. Based on information provided by Victim2, it would be consistent with the timeframe he provided investigators, indicating his online activity on blog forums in approximately 2013-2014.

48.     Investigators also identified a blog post from September 11, 2013, titled, "Get a real job,[Victim 2]" in which KRIEG posted multiple job openings at Company A and made comments indicating that he knew Victim 2's identity.

**Surveillance Footage**

49.     Investigators reviewed surveillance video from various sources for the date of September 6, 2017 and found the video and images of a Vehicle matching the description of KRIEG's Vehicle travel towards the East Chicago Post Office located at 901 East Chicago Avenue, East Chicago, Indiana slightly before 11:19 am.

50.     The bomb was delivered to the East Chicago Post Office at approximately 11:19 am. A review of surveillance camera shortly after time,

also captured a Vehicle matching the description KRIEG's Vehicle travelling away from the post office in a direction towards Company A.

51.     Surveillance footage showed that when KRIEG returned to Company A, he parked the VEHICLE in a different location and walked to an entrance door.[2]

### Interview With ERIC KRIEG

52.     On October 12, 2017, FBI Special Agents interviewed KRIEG at Company A. Prior to conducting the interview, FBI Special Agents informed KRIEG that he was not under arrest and was free to leave the interview at any time.

53.     After initially denying involvement in mailing of an explosive device on September 6, 2017, KRIEG admitted that he had done so.

54.     KRIEG admitted that he left Company A and travelled to the U.S. Post Office located at 901 E. Chicago Ave., East Chicago Indiana. KRIEG provided a description of what he was wearing and commented that it matched the description of the individual that was previously released to the media.

55.     KRIEG indicated where he parked and his statement was consistent with Witness 1's recollection of where the Crown Victoria was parked.

---

[2] Company A surveillance footage was recorded using many different cameras. Reviewing the footage revealed the several different camera locations were not synched to a central consistent time stamp.

56.     KRIEG admitted to manufacturing the destructive device that he mailed.  In doing so, KRIEG admitted to putting together specific components of the destructive device.  KRIEG's description of the destructive device he assembled matched components of the destructive device that were recovered from the U.S. Post Office located at 901 E. Chicago Ave., East Chicago Indiana after the September 6, 2017 explosion.

57.     KRIEG admitted to using M-80 type powder in the destructive device.  ATF confirmed that no destructive device is registered to KRIEG.

58.     KRIEG also admitted to mailing Victim 2 a threatening letter.

59.     KRIEG admitted to the return address labels placed on the destructive device mailed on September 6, 2017 and the second mailing to Victim 2.  Similar information, including the same name, was placed on both return address labels.  This information was not released to the public.

## Conclusion

60.     Based upon the information contained in this Affidavit, I believe probable cause exists for the issuance of a criminal complaint and arrest warrant for **ERIC KRIEG.**

14

FURTHER AFFIANT SAYETH NAUGHT.


Booz M. Moise, Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me this 12th day of October 2017.

s/Susan Collins

Susan L. Collins
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF INDIANA

15